**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,        ) | |
|           Plaintiff,     ) | Case No. 2:07-cr-00185-JCM-PAL |
|                  ) | **REPORT OF** |
| vs.                ) | **FINDINGS AND RECOMMENDATION** |
| RONNELL THOMAS JAMES,    ) | (M/Suppress - #24) |
|           Defendant.    ) | |

Before the court is Defendant Ronnell Thomas James' Motion to Suppress (#24). The court has considered the motion, the government's Response (#34), and defendant's Reply (#41).

**BACKGROUND**

The defendant is charged in an indictment returned August 15, 2007 with receipt of child pornography in violation of 18 U.S.C. § 2252A(a)(2) and possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The indictment also contains a forfeiture allegation. He seeks to suppress images of child pornography stored on his computer and various digital storage devices seized from his residence pursuant to a search warrant issued by the Honorable United States Magistrate Judge Lawrence R. Leavitt on August 25, 2006. Special Agent Tierney's affidavit attached to the Motion to Suppress (#24) states that on August 1, 2006 FBI agents conducted a search of Tony Byrne's residence pursuant to a search warrant for child pornography. Though he initially denied possessing any images of child pornography, Byrne eventually stated that there might be some child pornography on his computer because his friend, James, liked child pornography. Byrne advised the agents that he had told James that he was not interested in viewing such images; James had used his computer on numerous occasions and had free access to the computer when James house sat for Byrne; and all of the images of child pornography on his computer were downloaded by James.

1   After agents told Byrne he was not being truthful, Byrne admitted to downloading images of

2   child pornography and described the images and movies he had downloaded.  He stated that he had lied

3   to the agents because he feared a long prison sentence.  When asked whether he had told the truth about

4   James, Byrne said that James likes child pornography and Byrne had searched for child pornography at

5   James' request and burned the results onto approximately ten 700 megabyte discs, which Byrne later

6   saw at James' residence at 612 Glendale Avenue, North Las Vegas, Nevada.  Byrne described how he

7   had accessed the child pornography, including which peer-to-peer file sharing network and search terms

8   he had used.

9   The FBI conducted a search in the Shared Computer Operations for Protection and Enforcement

10   ("SCOPE") system, a Nevada criminal database, which showed James' residence as 608 Glendale

11   Avenue, North Las Vegas, Nevada.  SCOPE revealed that James is the registered owner of 612

12   Glendale Avenue, formerly owned by Audrey E. Harper (believed to be James' mother) and Herman C.

13   Harper, who are the registered owners of 608 Glendale.  Pursuant to an administrative subpoena served

14   on August 3, 2006, Embarq advised agents that Herman Harper and James had telephone service at 608

15   Glendale and Audrey Harper and Raymond C. Jones had service at 612 Glendale.  A query with the

16   Nevada Department of Motor Vehicles ("DMV") showed James' address as 608 Glendale.

17   Special Agent Tierney conducted surveillance of 608 and 612 Glendale on August 16 and 17,

18   2006.  He observed a car registered to Audrey Harper parked in front of 608 Glendale; a man talking on

19   a telephone in the front yard of 612 Glendale, who Tierney determined was James by comparing a

20   DMV photograph; and James exiting a vehicle parked in front of 612 Glendale which was registered to

21   James.  Based on the information gathered, Tierney concluded that James was in control of 612

22   Glendale, that there was probable cause to believe that James received and possessed child pornography

23   via the Internet in violation of 18 U.S.C. § 2252, and that evidence of this crime was located at 612

24   Glendale.

25   In his Motion to Suppress (#24), James argues that the search warrant was issued without

26   probable cause to believe that child pornography would be found in the location described.

27   Specifically, James argues that the self serving statements made by Tony Byrne which implicated both

28   James and Byrne in possession and receipt of child pornography were so unreliable that law

1    enforcement could not reasonably rely on the validity of the warrant issued as a result of those

2    statements.

3        The government opposes (#34) the motion, arguing that the warrant was based on probable

4    cause based on the affidavit of Special Agent Tierney.  However, even if the court finds the warrant was

5    not supported by probable cause, the good faith exception to the exclusionary rule applies and

6    suppression of the evidence seized pursuant to a validly issued warrant is not required.

7        James' reply (#41) reiterates arguments raised in the motion that the search warrant was based

8    strictly on the self serving statements of Tony Byrne whose information was not corroborated and,

9    therefore, did not support a finding of probable cause.  The good faith exception to the exclusionary

10   rule does not apply, it is argued, because the warrant was so lacking in probable cause that official

11   belief in the existence of probable cause is unreasonable.

12                                    **DISCUSSION**

13        The Fourth Amendment secures "the right of the people to be secure in their persons, houses,

14   papers, and effects against unreasonable searches and seizures."  U.S. Const. amend. IV.  Reasonable

15   and legitimate expectations of privacy are protected under the Fourth Amendment.  Katz v. United

16   States, 389 U.S. 347 (1967).  The Fourth Amendment protects "people not places."  Id. at 351.  A valid

17   search under the Fourth Amendment must be executed pursuant to a warrant supported by probable

18   cause, unless an exception applies.  Id.  Evidence obtained in violation of the Fourth Amendment, and

19   evidence derived from it may be suppressed as the "fruit of the poisonous tree."  Wong Sun v. United

20   States, 371 U.S. 471 (1963).

21        In Illinois v. Gates, 462 U.S. 213 (1982), the United States Supreme Court evolved new

22   standards by which search warrants are to be judged by reviewing courts once issued and executed.

23   After Gates, it is clear that the determination of probable cause is made by examining the "totality of the

24   circumstances."  The United States Supreme Court has repeatedly emphasized that the probable cause

25   standard is a "practical, non-technical conception."  Brinegar v. United States, 338 U.S. 160, 176

26   (1949).  Probable cause deals with "probabilities" which are not technical, but factual and practical

27   considerations of everyday life on which reasonable and prudent people, not legal technicians act.  Id. at

28   / / /

3

1  175.  Moreover, "only the probability, and not a prima facie showing of criminal activity, is the

2  standard of probable cause."  Gates, 462 U.S. at 235.

3      The Supreme Court held in Ornelas v. United States, 517 U.S. 690 (1996), that a probable cause

4  determination is two-fold.  First, judges must determine the "historical facts," that is, the events that

5  occurred leading up to the stop or the search.  Id. at 695.  Second, judges are to decide "whether those

6  historical facts, viewed from the standpoint of a reasonable police officer," amount to probable cause.

7  Id. at 696-97.  The Ornelas court held that appellate courts must review findings of historical facts only

8  for clear error and must "give due weight to the inferences drawn from those facts by resident judges

9  and local law enforcement officers."  Id. at 699.  However, the ultimate determination of whether

10  probable cause for a warrantless search or seizure exists is reviewed de novo on appeal.  Id.

11      The Gates decision made it clear that a magistrate's decision regarding probable cause should be

12  given great deference.  The duty of a reviewing court is to insure that the magistrate had a substantial

13  basis for concluding that probable cause existed.  A reviewing court is required to examine all

14  circumstances set forth in the affidavit, and in doubtful cases, to give preference to the validity of the

15  warrant.  United States v. Peacock, 761 F.2d 1313, 1315 (9th Cir.), cert. denied, 474 U.S. 847 (1985).

16      It is well recognized that law enforcement officers can rely on their own experience and the

17  experience and information of other law enforcement officers in establishing probable cause.  United

18  States v. Butler, 74 F.3d 916 (9th Cir. 1996).  Similarly, "a magistrate may rely on the conclusion of

19  experienced law enforcement officers regarding where evidence of a crime is likely to be found."

20  United States v. Fannin, 817 F.2d 1379, 1381 (9th Cir. 1987).  See also United States v. Ayers, 924

21  F.2d 1468, 1479 (9th Cir. 1991) ("in weighing the evidence supporting a request for a search warrant, a

22  magistrate may rely on the conclusions of experienced law enforcement officers regarding where

23  evidence of a crime is likely to be found.")  An officer need not include all of the information in his

24  possession to obtain a search warrant.  An affidavit need only show facts adequate to support the

25  finding of probable cause.  United States v. Johns, 948 F.2d 599, 605 (9th Cir. 1991).

26      Reviewing the affidavit as a whole, applying the totality of the circumstances test, and showing

27  the issuing judge great deference as mandated by the United States Supreme Court, this court concludes

28  the issuing judge had a substantial basis for concluding that probable cause existed for issuance of the

4

1    search warrant.  Byrne provided FBI agents with a detailed account of how he and James had obtained

2    child pornography, where the images were stored, and that he had personally seen discs containing child

3    pornography at James' residence.  The agents investigated further, confirming James' residence through

4    a SCOPE search, DMV query, telephone subpoena, and surveillance.  James incorrectly argues that

5    Byrne's statements do not support probable cause because they "would insulate him completely from

6    liability" and Byrne was an unreliable accomplice.  (Mot. at 7.)  Because Byrne's statements implicated

7    both Byrne and James, the statements were against Byrne's penal interests.  The Supreme Court has

8    held that such statements "carry their own indicia of credibility – sufficient at least to support a finding

9    of probable cause."  United States v. Harris, 403 U.S. 573, 583 (1971).

10        Moreover, the fact that Byrne may have been an accomplice to the crime does necessarily make

11   him an unreliable informant.  Byrne's statements were detailed, based on personal knowledge rather

12   than speculation, and were against Byrne's own penal interests.  Therefore, the evidence presented to

13   Magistrate Judge Leavitt, taken as a whole, established the probability that child pornography would be

14   found in the defendant's residence.

15        Finally, even if Tierney's affidavit lacks probable cause, the "good faith" exception to the

16   exclusionary rule applies.  Evidence seized pursuant to a facially valid search warrant which later is

17   held to be invalid may nevertheless be admissible if officers conducting the search acted in "good faith"

18   and in reasonable reliance on the warrant.  United States v. Leon, 468 U.S. 897 (1984).  Leon

19   recognized four circumstances in which the "good faith" doctrine would not apply to avoid suppression.

20   They include: (1) where the issuing magistrate was misled by information in the affidavit which was

21   knowingly or recklessly false; (2) where the issuing magistrate had abandoned the detached and neutral

22   judicial role; (3) where the affidavit was so lacking in probable cause as to render official belief in its

23   existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to

24   particularize the place to be searched or things to be seized that the executing officers could not

25   reasonably presume it to be valid.  Id. at 923.

26        Of the four circumstances described in Leon in which the "good faith" doctrine does not apply,

27   James only asserts that the third circumstance is applicable to this case.  The court finds that the

28   affidavit before the magistrate judge established probable cause for the search warrant.  However,

assuming without deciding that no probable cause existed, the court finds that, for the reasons stated above, the affidavit was not "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." <u>Leon</u>, 468 U.S. at 924 (internal quotations omitted).

Based on the foregoing and for good cause appearing,

**IT IS RECOMMENDED** that James' Motion to Suppress (#24) be DENIED.

Dated this 28th day of February, 2008.

_____
PEGGY A. LEEN
UNITED STATES MAGISTRATE JUDGE

6